718 So.2d 820 (1998)
L.D. STEWART and Michael J. Maricle, Appellants,
v.
TASNET, INC.; Dennis G. Ruppel, as Trustee; Marine Bank; Daniel C. Gregory, and Janice Gregory, Appellees.
L.D. STEWART and Michael J. Maricle, Appellants/Cross-Appellees,
v.
TASNET, INC.; Dennis G. Ruppel, as Trustee; Marine Bank; Daniel C. Gregory, and Janice Gregory, Appellees/Cross-Appellants.
Nos. 97-00933, 97-02710.
District Court of Appeal of Florida, Second District.
April 15, 1998.
Zala L. Forizs of Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, for Appellants.
Michael C. Markham of Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, for Appellees.
ALTENBERND, Judge.
L.D. Stewart and Michael J. Maricle appeal a summary final judgment in favor of the defendants, Tasnet, Inc., Dennis. G. Ruppel, Marine Bank, Daniel C. Gregory, and Janice Gregory. Messrs. Stewart and Maricle also appeal the award of attorneys' fees pursuant to section 57.105(2), Florida Statutes (1995). The defendants, with the exception of Marine Bank, cross-appeal the denial of their motion for attorneys' fees pursuant to section 768.79(1), Florida Statutes (1995). We affirm the summary judgment. We reverse the trial court's award of attorneys' fees based on section 57.105(2), but remand for a determination of attorneys' fees under section 768.79(1) and (7).
The commercial transaction out of which this litigation arose is somewhat complex. Mr. Stewart and Mr. Maricle, the plaintiffs, were the account parties responsible for reimbursing Barnett Bank, as the confirming bank, when it paid $250,000 on standby letters of credit issued to Marine Bank. Marine Bank had received the letters of credit as security for its loans to Tasnet. When Tasnet *821 defaulted on the loans, Marine Bank demanded payment on the letters of credit.
Messrs. Stewart and Maricle were not principals in Tasnet and were not involved in its day-to-day operations. They were speculative investors who had received stock in Tasnet in exchange for taking the risks associated with being account parties on the letters of credit. When Messrs. Stewart and Maricle undertook these risks and received the stock, they obtained no contractual rights for reimbursement from Tasnet or any of its principals. They were not in privity with Marine Bank, and Barnett Bank received no rights assignable to the account parties when it honored the letters of credit.
Because they could not sue for "conventional" or contractual subrogation, Messrs. Stewart and Maricle filed this action seeking "legal" or equitable subrogation to the rights of various parties to this transaction. Although this remedy is now commonly referred to as "equitable subrogation," case law describes it as "legal subrogation" because it arises by operation of law, to provide a remedy "where one having a liability or a right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is, in equity, entitled to the security or obligation held by the creditor whom he has paid." Boley v. Daniel, 72 Fla. 121, 122, 72 So. 644, 645 (1916). See generally Fortenberry v. Mandell, 271 So.2d 170 (Fla. 4th DCA 1972); Meyer v. Florida Home Finders, 90 Fla. 128, 105 So. 267 (1925); 12 Fla. Jur.2d Contribution, Indemnity, and Subrogation §§ 17-22 (1979). The trial court granted summary judgment against Messrs. Stewart and Maricle on these claims. Without holding that an account party on a standby letter of credit would never be entitled to legal subrogation, we affirm the trial court's decision that subrogation is unwarranted as a matter of equity in this case. See Tudor Dev. Group, Inc. v. United States Fidelity & Guar. Co., 968 F.2d 357 (3d Cir.1992); Mead Corp. v. Dixon Paper Co., 907 P.2d 1179 (Utah App.1995).
The trial court awarded attorneys' fees against the plaintiffs and in favor of all of the defendants under section 57.105(2). The trial court's award is based on attorneys' fee provisions in the contracts among the various defendants. The plaintiffs lost in the trial court because they were not parties to those contracts. They had no right of contractual subrogation and never alleged a claim directly on the contracts. They failed to establish a basis for subrogation because they had received stock in consideration for providing the letters of credit without reserving a conventional, i.e., contractual right to subrogation, and were not equitably entitled to assume the rights of a party to the contracts under legal subrogation. We conclude that section 57.105(2) does not authorize an award of fees under these circumstances. See, e.g., Suchman Corporate Park v. Greenstein, 600 So.2d 532 (Fla. 3d DCA 1992) (nonrecourse mortgagors not entitled to fees under section 57.105(2)); David v. Richman, 568 So.2d 922 (Fla.1990) (no entitlement to fees when contract never formed).
This is largely a Pyrrhic victory for the plaintiffs, however, because all of the defendants, except Marine Bank, requested attorneys' fees pursuant to an offer of judgment and section 768.79(1). The trial court declined to consider this statute because it had awarded fees under section 57.105(2), and because the plaintiffs were seeking reimbursement in subrogation. Section 768.79(1) applies to "any civil action for damages." This statute is located in part II of chapter 768, which generally applies to "any action for damages, whether in tort or in contract." § 768.71(1), Fla. Stat. (1995). Case law has broadly applied the statute to common law and statutory actions that result in monetary judgments for legal damages. See, e.g., Duncan v. Prudential Ins. Co., 690 So.2d 687 (Fla. 1st DCA 1997) (statute applies to any civil action for damages); Coast to Coast Real Estate, Inc. v. Waterfront Props., Inc., 668 So.2d 686 (Fla. 4th DCA 1996) (declaratory judgment action seeking entitlement to real estate commission); V.I.P. Real Estate Corp. v. Florida Executive Realty Mgmt. Corp., 650 So.2d 199 (Fla. 4th DCA 1995) (interpleader action seeking damages). There is an argument that legal subrogation, as contrasted with conventional subrogation, is outside part II of chapter 768 because it is an equitable remedy, and not a cause of *822 action directly in either tort or contract. Nevertheless, we conclude section 768.79 applies to all claims for subrogation. Subrogation claims are civil actions seeking monetary remedies on the theory that the plaintiff was damaged by being required to pay the debt of another. This equitable remedy essentially permits the plaintiff to become a third party to a contract by operation of law. Even though section 768.79 is in contravention of the common law, we interpret it to encompass both conventional and legal subrogation claims. The trial court entered summary final judgment in favor of the defendants who had made an offer of judgment to the plaintiffs. Accordingly, the trial court must consider an award of attorneys' fees to these defendants under section 768.79(1) and (7) on remand.
Affirmed in part, reversed in part, and remanded.
PARKER, C.J., and GREEN, J., concur.